

# LEPISCOPO & ASSOCIATES

*SERVING SAN DIEGO & ORANGE COUNTIES*

 http://www.linkedin.com/in/petelepiscopo/
www.LepiscopoLawFirm.com

_____
**SAN DIEGO OFFICE**



Aaron D. Aftergood (239853)
   aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith*
   tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Pro Hac Vice* admission to be sought

Attorneys for Plaintiff and the Class

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Erica Reiners,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Chou Team Realty, LLC** d/b/a **MonsterLoans**, a California limited liability company, **Lend Tech Loans, Inc.**, a California corporation, **Sean Cowell**, an individual, **Thomas Chou**, an individual, **Mikael Van Loon**, an individual, **Jawad Nesheiwat**, an individual, and **Eduardo Martinez**, an individual,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1.     Plaintiff Erica Reiners ("Plaintiff" or "Reiners") brings this Class Action Complaint and Jury Demand ("Complaint") against Defendants Chou Team Realty, LLC d/b/a MonsterLoans ("MonsterLoans"), Lend Tech Loans, Inc. ("Lend Tech"), Sean Cowell ("Cowell"), Thomas Chou ("Chou"), Mikael Van Loon ("Van Loon"), Jawad Nesheiwat ("Nesheiwat"), and Eduardo "Ed" Martinez ("Martinez") (collectively "Defendants") to obtain redress for, and to put an end to, Defendants' serial violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA" or "Act") and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

2.     Specifically, Plaintiff files the instant action to put an end to the Defendants' practice of obtaining and using consumer reports absent any permissible purpose, and to obtain redress for all individuals injured by the Defendants' conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

3.     Enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies, the FCRA explicitly protects consumers from disclosure of their personal information contained in their consumer reports. To that end, the Act prohibits companies from willfully or negligently obtaining and using a consumer report unless the report is obtained for a permissible purpose under the Act, and the prospective user has certified to the purpose for which it is being obtained.

4.     Defendants here willfully violated the FCRA by procuring consumer reports from Experian Information Solutions, Inc. ("Experian") regarding consumers nationwide absent any permissible purpose and using the consumer reports for impermissible purposes by impermissibly reselling or distributing the reports to entities who likewise do not possess any permissible purpose for using or obtaining

1    the reports.

2        5.      In this case, the Defendants worked together to deprive Plaintiff and the

3 Class of similarly situated individuals of their privacy rights absent any permissible

4 purpose whatsoever. The scheme worked as follows: the Defendants, acting in

5 concert, created a sham entity known as Lend Tech to obtain consumer reports from

6 Experian under the guise that it intended to solicit consumers with mortgage-related

7 firm offers of credit. However, Defendants never sent consumers any firm offers of

8 credit and never intended to send any such firm offers.

9        6.      Rather, Defendants undertook to distribute the consumer reports that

10 they obtained about Plaintiff and the class members to student loan consolidation

11 entities who likewise lacked any permissible purpose for obtaining the consumer

12 reports. The student loan consolidation entities would then utilize the reports to

13 solicit consumers for a fee-based document preparation service. Defendants would

14 then take a share in the profits (or equity) from these student loan consolidation

15 entities.

16        7.      As a result of Defendants' willful violations of the FCRA and UCL,

17 Plaintiff Reiners and the members of the Class were deprived of their privacy rights

18 guaranteed to them by federal law, and they are thus entitled to statutory damages of

19 at least $100 and not more than $1,000 for each willful violation. *See* 15 U.S.C. §

20 1681n(a)(1)(A).

21                                         **PARTIES**

22        8.      Plaintiff Reiners is a natural person and citizen of the State of Colorado.

23 She resides in Denver, Denver County, Colorado.

24        9.      Defendant Chou Team Realty, LLC d/b/a MonsterLoans is a California

25 limited liability company with its principal place of business located at 25391

26 Commercentre Dr., Suite 100, Lake Forest, California 92630. MonsterLoans was

27 formerly known as Chou Team Realty, Inc. until converting to Chou Team Realty,

28 LLC on or around March 1, 2018.

**CLASS ACTION COMPLAINT**       - 3 -

1       10.    Defendant Lend Tech Loans, Inc. is a California corporation with its

2  principal places of business located at 1851 E. First St., #810, Santa Ana, California

3  92705.

4       11.    Defendant Sean Cowell is a natural person and citizen of the State of

5  California. Cowell was the incorporator of Lend Tech as well as the co-founder and

6  Chief Visionary Officer of MonsterLoans.

7       12.    Defendant Thomas Chou is a natural person and citizen of the State of

8  California. Defendant Chou is a co-founder of MonsterLoans and has held himself

9  out as the president of the company. On information and belief, Chou relinquished

10  the title of president in or around mid-2017.

11       13.    Defendant Mikael Van Loon is a natural person and citizen of the State

12  of California. Van Loon has been the Chief Executive Officer of MonsterLoans from

13  January 2017 through the present.

14       14.    Defendant Jawad Nesheiwat is a natural person and citizen of the State

15  of California. Nesheiwat was the co-founder and former Chief Operating Officer of

16  MonsterLoans.

17       15.    Defendant Eduardo "Ed" Martinez is a natural person and citizen of the

18  State of California.

19                  **JURISDICTION AND VENUE**

20       16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331

21  because this action arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et*

22  *seq.*, which is a federal statute. Furthermore, jurisdiction is proper under the Class

23  Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the class

24  consists of over 100 people, at least one member of each class is from a State other

25  than California (the state of the Defendants), and the amounts in controversy are

26  over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply. This

27  Court has ancillary and pendent jurisdiction over the state-law UCL claims under 28

28  U.S.C. § 1367 *et seq.*

17. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, are all headquartered or reside in this District, and the unlawful conduct alleged in the Complaint emanated from this District.

18. Venue is proper in this District under 28 U.S.C. § 1391 because all Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims occurred in and/or emanated from this District.

## FACTS COMMON TO ALL CLASS MEMBERS

### *MonsterLoans's Procurement Of Consumer Reports*

19. Defendant MonsterLoans is a California mortgage lending company with its principal place of business located at 25391 Commercentre Dr., Suite 100, Lake Forest, California 92630.

20. MonsterLoans is licensed to conduct mortgage related business in at least the following states: California, Colorado, Connecticut, Florida, Georgia, Illinois, Montana, New Jersey, North Carolina, Tennessee, and Washington.

21. On information and belief, MonsterLoans has purchased consumer reports from Experian to further its mortgage lending business.

22. On information and belief, MonsterLoans purchased consumer reports from Experian prior to June 2017 to engage in the student loan consolidation scheme outlined below.

### *Formation of Lend Tech Loans, Inc.*

23. In or around May 2017, Defendants Nesheiwat and Chou had email communications in which they openly discussed the need to create a stand-alone entity at a commercial location to obtain an Experian account.

24. In an email dated May 11, 2017, Defendant Nesheiwat stressed the need to create a stand-alone entity to circumvent Experian's internal inspection controls and explaining that he needs "to have a story behind it to make sense for the volume of data." Nesheiwat continued by stating "Its [sic] very important to me personally

1 with the risk involved to cover my butt."

2     25.    In or around June 2017, MonsterLoans stopped procuring consumer

3 reports from its own Experian account to be used by the student loan consolidation

4 entities.

5     26.    Also, in or around June 2017, on information and belief, Defendants

6 worked to establish a stand-alone entity to obtain consumer reports from Experian

7 under false pretenses.

8     27.    Defendants created Lend Tech for the stated purpose of engaging in the

9 business of mortgage lending. However, on information and belief, Lend Tech has

10 not, and does not, engage in the business of mortgage lending.

11     28.    Instead, on information and behalf, Lend Tech was created for the

12 purpose of financially benefiting the Defendants. That is, Lend Tech was set up by

13 the Defendants as a means of falsely obtaining consumer reports from Experian and

14 to use them to generate leads for the scheme detailed below.

15     29.    On information and belief, Lend Tech was created to obtain an Experian

16 account so that Defendants could cease using MonsterLoans's account to unlawfully

17 obtain the reports. Indeed, MonsterLoans stopped procuring such reports in June of

18 2017.

19     30.    On June 15, 2017, Cowell filed Lend Tech's Articles of Incorporation

20 with the California Secretary of State.

21     31.    Thereafter, the Defendants applied for an Experian account in Lend

22 Tech's name to procure the consumer reports.

23     32.    To provide a facade of legitimacy for Lend Tech, the Defendants

24 utilized MonsterLoans's name, status, and legitimacy.

25     33.    Indeed, MonsterLoans provided an approval letter to Lend Tech, which

26 stated that it was approving Lend Tech "to market, originate and/or facilitate home

27 loans with and to" MonsterLoans.

28     34.    Further, on information and belief, MonsterLoans and Lend Tech

1  entered into a sublease agreement. Lend Tech would purport to operate at the

2  address 25391 Commercentre Dr., Suite 100, Lake Forest, California 92630.

3         35.    On or around August 17, 2017, Experian approved Lend Tech for an

4  account that would enable it, Lend Tech, to obtain consumer reports.

5         36.    Lend Tech immediately began procuring consumer reports.

6         37.    On January 23, 2018, Lend Tech filed an updated Statement of

7  Information with the California Secretary of State, which listed its current principal

8  office address as 1851 E. First Street, #810, Santa Ana, California 92705.

9         38.    However, on information and belief, Lend Tech had never resided at the

10 1851 E. First Street address. Rather, that address was subleased to an entity known

11 as Docs Done Right, LP.

12        39.    Docs Done Right, LP claims to perform document preparation services.

13        40.    Defendant Martinez is also the Chief Executive Officer of Docs Done

14 Right, LP.

15        41.    For his part, Defendant Martinez assisted in procuring the consumer

16 reports from Experian to be used to unlawfully solicit consumers for Docs Done

17 Right's fee-based document preparation services.

18        42.    On information and belief, Defendants utilized Lend Tech's Experian

19 account for their mutual benefit—to obtain consumer reporting information under

20 false pretenses so they could sell the information and use it to drum up leads for their

21 document preparation business.

22        43.    On information and belief, throughout its existence, Lend Tech failed to

23 operate as a distinct business entity. That is, Lend Tech failed to maintain adequate

24 business records, failed to maintain minutes of any corporate meetings, failed to

25 maintain current financial records and statements, and commingled the funds and

26 assets of the corporation with the principals' personal funds.

27        44.    Moreover, as previously stated, Lend Tech's stated principal office

28 address is the address of a separate entity, Docs Done Right, LP.

**CLASS ACTION COMPLAINT**           - 7 -

1    45.    On information and belief, Lend Tech does not possess any substantive

2  assets and is severely undercapitalized. Consequently, Plaintiff is unlikely to be able

3  to recover her damages from Lend Tech.

4    46.    During all times relevant to the Complaint, Lend Tech operated to

5  benefit MonsterLoans's members, managers, and officers—including Cowell, Chou,

6  Van Loon, Nesheiwat, and potentially others.

7    47.    On information and belief there is a unity of interest and common

8  ownership between MonsterLoans and Lend Tech. Specifically, Defendant Cowell

9  incorporated the business, and MonsterLoans knowingly worked to provide false

10  legitimacy to Lend Tech so Lend Tech could obtain the Experian reports.

11    48.    In short, Lend Tech operated as if it were an extension of

12  MonsterLoans, and to insulate MonsterLoans from any potential liability. As such,

13  Lend Tech is the alter ego of MonsterLoans.

14    49.    On information and belief, Lend Tech possesses no legitimate business

15  purpose. Rather, Defendants utilized Lend Tech's corporate form to personally

16  enrich themselves at the expense of consumers.

17  **Defendants' Scheme To Unlawfully Obtain & Use Consumer Reports**

18    50.    On information and belief, beginning in or around August 2017,

19  Defendants began procuring consumer reports via Lend Tech's Experian account.

20    51.    Defendants obtained the reports by claiming that Lend Tech would use

21  the information to solicit consumers for home loan refinancing in the form of a firm

22  offer of credit—a permissible purpose under the FCRA.

23    52.    Instead of extending such offers as represented, however, Defendants

24  obtained the reports for the purpose of soliciting consumers to purchase a "fee based

25  application assistance" service through a web of student loan consolidation entities.

26  In doing so, Defendants distributed class members' consumer reports, or consumer

27  report information, to student loan consolidation entities, including Docs Done

28  Right, LP, Clarity Solutions Center, LLC ("CSC"), Assure Direct Service, Inc., and

Case 2:20-cv-06587-JVS-ADS    Document 38-4    Filed 10/05/20    Page 10 of 21    Page ID #:173

1   others.

2   53.     For a substantial fee, the student loan consolidation entities offered to

3   complete documents on behalf of consumers to consolidate their student loans. In

4   reality, the services that student loan consolidation entities attempted to solicit

5   Plaintiff to purchase are easily completed online for free via the Department of

6   Education. Unsurprisingly, the Department of Education warns consumers not to fall

7   for the deceptive practices of companies and describes such outfits as "fraudsters

8   who are after your money."[1]

9   54.     On information and belief, Defendants worked together to operate,

10  direct, and oversee this scheme to generate leads of borrowers so they could obtain

11  fees from consumers with outstanding student loan balances.

12  55.     Defendants participated in obtaining and using the consumer reports

13  that were unlawfully obtained through Lend Tech's Experian account.

14  56.     Further, on information and belief, the Defendants received a share of

15  the profits from the fees collected by student loan consolidation entities. The profits

16  were distributed to the Defendants who possessed ownership interests (sometimes

17  through separate entities) in the debt relief companies.

18  57.     Because of the failure to provide any possible permissible purpose,

19  Plaintiff brings this suit, on behalf of herself and those similarly situated, to put an

20  end to Defendants' repeated and widespread FCRA and UCL violations. Such

21  violations entitle her, and other similarly situated persons, to statutory damages of

22  not less than $100 and not more than $1,000 per violation, plus injunctive relief.

23  **FACTS SPECIFIC TO PLAINTIFF**

24  58.     On or around August 9, 2018, Defendants, via Lend Tech's Experian

25  account, obtained Plaintiff's consumer report from Experian.

26  59.     Defendants did not have Reiner's authorization to pull her consumer

27

28  _____

[1] https://studentaid.gov/resources/scams#banned-companies

1   report, nor did they have any permissible purpose to request her report.

2         60.    On information and belief, Defendants obtained Plaintiff's consumer

3   report for the stated purpose of making a firm offer of credit. However, Defendants

4   did not offer Plaintiff any form of credit or insurance.

5         61.    Indeed, Plaintiff has never received a firm offer of credit or insurance

6   from Lend Tech nor any defendant.

7         62.    Instead, Defendants used Plaintiff's consumer report for the purpose of

8   soliciting her to purchase student loan related "fee-based application assistance."

9         63.    To facilitate this process, Defendants sold or otherwise conveyed

10   Plaintiff's consumer report to CSC.

11         64.    On or around August 17, 2018, CSC mailed Plaintiff Reiners a letter

12   soliciting her to purchase its "fee-based application assistance" service. (*See* CSC

13   Letter, a true and accurate copy of which is attached hereto as Exhibit A.) This is not

14   a permissible purpose under the Act.

15         65.    And a review of online complaints reveals that the Defendants' conduct

16   is widespread. The online complaints include as follows:

17
18   - On December 12 2017 I paid Clarity Solutions $699.00 to help me
19     with my student loan debt. I found out through research later that I
       could perform the service myself for free. I asked them for a refund
20     and was told that I was within the 14 day refund period and it wouldn't
       be granted. I called again on February 1 2018 and was told I would
21     receive a refund check my mail by February 6 2018 and that the check
       had already been mailed. I called again today (February 15 2018) and
22     was told that the refund had only been approved but not mailed and
       the check could arrive any time from this day forward. I do not
23     believe that I will ever get a refund.[2]
24
25   - I signed to consolidate my loans using a third party servicer. I paid a
26     large amount to the third party servicer. After 2 weeks, I decided to

27
28   _____
     [2] https://www.bbb.org/us/ca/orange/profile/legal-document-help/clarity-solutions-center-llc-1126-172020336/complaints

cancel the services because I found I can do these consolidation services free of charge using my own student loan provider. I called and told them to cancel my application and requested a refund. The company refused to give me a refund because "the paperwork was already sent." I then call the agency to which the servicer sent my consolidation application to, the agency had my application, however, my date of birth was wrong. I had to reset my application due to the wrong date of birth the third party servicer had given the agency. Due to the wrong information this company provided I would like a full refund for the discrepancies.[3]

- I was trying to consolidate my federal hopes to lower my payment. Unfortunately I got scammed by a "company" called Clarity Solutions Center. They essentially stole/took four payments of $274.75 (total 1,102.96) from me charging me to fill out my consolidation paperwork, which I later found out can be done for free. They then neglected to send the paperwork filled out to the company nelnet. Nelnet was the company that informed me of these scams & these forms are free to fill out.[4]

66.    For obtaining and using her consumer report absent any permissible purpose, Plaintiff brings this suit, on behalf of herself and those similarly situated, to put an end to Defendants' repeated and widespread FCRA violations. Such violations entitle her, and other similarly situated persons, to injunctive relief plus statutory damages of not less than $100 and not more than $1,000 per violation.

## CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rules 23(b)(2) and 23(b)(3) on behalf of herself and a nationwide Class defined as follows:

All persons in the United States who: (1) from a date two years prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) Defendants obtained a consumer report about; (3) through Lend Tech's Experian account; (4) where the purported

---

[3] https://www.bbb.org/us/ca/santa-ana/profile/debt-consolidation-services/unified-document-services-llc-1126-172020968/complaints

[4] https://www.scampulse.com/clarity-solutions-center-reviews

permissible purpose for obtaining and using the consumer report was the same as the purported permissible purpose that was claimed to obtain Plaintiff's consumer report.

68.    Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) Plaintiff's counsel and Defendants' counsel; (4) persons who execute and file a timely request for exclusion, (5) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (6) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates the need to amend the class definition following a reasonable period for discovery regarding the contours of the Class.

69.    **Numerosity:** The exact number of class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have procured consumer reports regarding millions of individuals. Further, the class members can readily be ascertained through Defendants' records.

70.    **Commonality:** Common questions of law and fact exist as to all members of the Class for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a)    Whether Defendants' conduct described herein violated the FCRA;

(b)    Whether Defendants possessed any permissible purpose to obtain Plaintiff's and the class members' consumer reports;

(c)    Whether MonsterLoans can be held liable for the actions of Lend Tech as its alter ego;

(d)    Whether Lend Tech's corporate veil should be pierced;

(e)    Whether Lend Tech was created by Defendants for the express purpose of unlawfully obtaining consumer reports;

(f)   Whether Defendants provided firm offers of credit to consumers; and

(g)   Whether Defendants have acted willfully.

71.   **Typicality:** As a result of Defendants' uniform and repeated pattern of providing, procuring, and using consumer reports absent any permissible purpose, Plaintiff and the class members suffered the same injury and similar damages. If Defendants' actions violated the FCRA as to Plaintiff, then they violated the FCRA as to all class members. Thus, Plaintiff's claims are typical of the claims of the other class members.

72.   **Adequate Representation:** Plaintiff is a member of the Class and both she and her counsel will fairly and adequately represent and protect the interests of the Class, as neither has interests adverse to those of the class members and Defendants have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Further, Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the financial resources to do so.

73.   **Conduct Applicable Towards Class as a Whole:** Defendants acted consistently with respect to every member of the Class. No Class Member was treated specially or different as Defendants acted in the same manner with respect to all Class Members. As such, injunctive relief and corresponding declaratory relief are available and appropriate.

74.   **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given class member's situation, the answer to whether Defendants' conduct described herein repeatedly violated the FCRA and UCL is the same for everyone—a resounding "yes"—and the same will be proven using common evidence.

75.   **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical,

and the damages suffered by/available to the individual class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the class members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the class members.

## **FIRST CAUSE OF ACTION**
### **Violation of 15 U.S.C. § 1681b, *et seq.***
### **(On Behalf of Plaintiff and the Class)**

76.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77.     The FCRA provides that:

A person shall not use or obtain a consumer report for any purpose unless--

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. 1681b(f).

78.     On or around August 9, 2018, Defendants, via Lend Tech's Experian account, procured a consumer report regarding Plaintiff and other class members.

79.     In violation of Section 1681b(f), Defendants did not possess any permissible purpose to obtain a consumer report regarding Plaintiff or any of the similarly situated class members.

80.     Further, Lend Tech did not utilize the consumer reports for the purpose of making a firm offer of credit, its claimed permissible purpose.

81. Instead, Defendants used the consumer reports that they obtained for impermissible purposes under the Act.

82. Specifically, Defendants undertook to sell or distribute the consumer reports, or consumer report information, that it received from Experian to the student loan debt consolidation entities, such as CSC, to be used to solicit consumers to purchase their fee based application assistance. This is not a permissible purpose under the Act.

83. Further, Defendants shared in the profits of the student loan debt consolidation entities.

84. Defendants violations of 15 U.S.C. § 1681b(f) were willful for at least the following reasons:

    (i)   The rule that consumer reports may only be obtained for a permissible purpose has been the law established for well over a decade;

    (ii)   Defendants have repeatedly procured consumer reports for unlawful purposes for years;

    (iii)   Defendants knowingly established Lend Tech for the purpose of unlawfully obtaining consumer reports from Experian. The creation of an entity under false pretenses demonstrates the mental state of the Defendants;

    (iv)   Defendants utilized MonsterLoans's legitimacy to provide Lend Tech with the appearance of legitimacy;

    (v)   Defendants regularly engage counsel—therefore, it had ample means and opportunity to seek legal advice regarding its FCRA responsibilities; and

    (vi)   Defendants profited off the sale of Plaintiff's and the class members' personal student loan information on a repeated basis.

85. Plaintiff and the Lend Tech Class are entitled to statutory damages of

not less than $100 and not more than $1,000 for each of Defendants' willful violations pursuant to 15 U.S.C. § 1681n(a)(1)(A).

86.    In the alternative, Defendants' acted negligently and caused Plaintiff and the Class Members to suffer actual damages.

87.    Accordingly, under the FCRA, Plaintiff and the Lend Tech Class seek statutory damages, costs and reasonable attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

## SECOND CAUSE OF ACTION
### Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of Plaintiff and the Class)

88.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89.    By their actions as set forth throughout this Complaint, Defendants have violated the "unlawful conduct" prong of the UCL.

90.    It is against the law, specifically the FCRA, to willfully or negligently obtain consumer reports without a permissible purpose.

91.    Defendants here willfully obtained consumer reports from Experian through trickery and false pretenses—deliberately misrepresenting what the reports would be used for and going so far as to create a sham entity, Lend Tech, whose sole purpose was to assist in the deception.

92.    Plaintiff and the Lend Tech Class are entitled to injunctive relief under the UCL to stop Defendants' unlawful conduct.

93.    Accordingly, under the UCL, Plaintiff and the Class seek injunctive relief enjoining Defendants from continuing to obtain and distribute consumer reporting information under false pretenses plus costs, reasonable attorneys' fees, and such other relief as the Court deems necessary, reasonable, and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erica Reiners, individually and on behalf of the

1  Class, respectfully requests that this Court issue an order:

2      A.    Certifying this case as a class action on behalf of the Class defined

3              above, appointing Erica Reiners as class representative and appointing

4              her counsel as class counsel;

5      B.    Finding that Defendants' actions constitute repeated and willful

6              violations of the FCRA;

7      C.    Issuing an Order holding MonsterLoans responsible for the actions of

8              Lend Tech under the theory of alter ego liability;

9      D.    Issue an Order piercing the veil of Lend Tech and holding all

10             shareholders, officers, and principals responsible for its actions;

11     E.    Awarding injunctive relief under the UCL enjoining Defendants from

12             continuing to violate the FCRA by obtaining consumer reports under

13             false pretenses;

14     F.    Awarding damages, including statutory and treble damages where

15             applicable, to Plaintiff and the Class in amounts to be determined at

16             trial;

17     G.    Awarding Plaintiff and the Class their reasonable litigation expenses

18             and attorneys' fees;

19     H.    Awarding Plaintiff and the Class pre- and post- judgment interest, to the

20             extent allowable; and

21     I.    Such further and other relief as the Court deems reasonable and just.

22                     **JURY DEMAND**

23     Plaintiff requests a trial by jury of all claims that can be so tried.

24

25                         Respectfully submitted,

26   Dated: July 23, 2020         **Erica Reiners**, individually and on behalf of

27                         all others similarly situated,

28

By:      /s/ Aaron D. Aftergood
         One of Plaintiff's Attorneys

Aaron D. Aftergood (239853)
   aaron@aftergoodesq.com
The Aftergood Law Firm
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith*
   tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Class*

*Pro Hac Vice Applications to be sought

**CLASS ACTION COMPLAINT**                    - 18 -

Case 2:20-cv-06587-JVS-ADS   Document 33-4   Filed 10/05/20   Page 20 of 21   Page ID
#:183
Case 2:20-cv-06587-JVS-ADS   Document 13-4   Filed 07/28/20   Page 1 of 2   Page ID #:19

# Exhibit A

BENEFIT ID#: CS12094608



Address Change? Please contact our
Customer Service Department

# Final
# Notice



֊|ı|ı|ıı|ıı|ıllı|ıll|ıllılı|ı|ılııı,ıı|lllılı|ıı|ıl|       358

Erica Reiners
1164 S. Acoma St. Unit 323
Denver, CO 80210-1646

Contact: 1-877-302-2178
Assigned Dept. Clarity Solutions Center
NOTICE DATE: August 17th, 2018

## Student Loan Consolidation & Payment Reduction Program Prepared For:
### Erica Reiners
*NEW LAWS DISCOUNTING FEDERAL STUDENT LOANS*

Dear Erica,

Our records indicate that your federal student loans may be eligible for a consolidation with the U.S. Department of Education. As a federal student loan holder you may be eligible to convert your current high-interest loan into a federally-backed consolidation with a lower rate*.

These government programs are based on income and family size, aimed to be as affordable as possible for each individual. Your loans in the amount of $20,000 may even be eligible for total loan forgiveness.

Benefits of this program may include:
- **No credit check**
- **Interest rate reduction**
- **Lower monthly payments based on income and family size**
- **Loan forgiveness**

Please create your Federal Student Aid ID and call by September 17th, 2018 or before your next payment is due: 1-877-302-2178

**CREATING YOUR FSA ID**
To create your new student FSA ID, go to the URL below to reach the Federal Aid Website. Follow the steps completely to create your ID.

**IMPORTANT:** This is a government website which CSC does not own. FSA ID creation is a government program which CSC did not create.

https://www.nslds.ed.gov

- Step 1 – Click 'Financial Aid Review'
- Step 2 – Click 'Accept'
- Step 3 – Click 'Create an FSA ID'

Student Loan Assistance Department
1-877-302-2178
Monday – Friday 7:00am – 6:00pm PST

 **CALL TOLL-FREE TODAY TO REDEEM YOUR FEDERAL BENEFITS: 1-877-302-2178**
**REFERENCE BENEFIT ID: CS12094608**

CSC is not affiliated with the government or any of its programs. We offer private, fee-based application assistance to aid consumers in applying for government offered programs. While such programs may be available for free directly by various government agencies, our services are fee-based and focus on application and document preparation. We do not charge fees for access to such programs, only to prepare and counsel application to these programs. Services may be fulfilled by a third party processing agency.

*The Department of Education may offer an interest rate reduction with set-up of automatic payments.