Aaron D. Aftergood (239853)
    aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Taylor T. Smith*
    tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 907-7628
Facsimile: (303) 927-0809

*Pro Hac Vice*

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Erica Reiners,** individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**Chou Team Realty, LLC** d/b/a **MonsterLoans**, a California limited liability company, **Lend Tech Loans, Inc.**, a California corporation, **Sean Cowell**, an individual, **Thomas Chou**, an individual, **Mikael Van Loon**, an individual, **Jawad Nesheiwat**, an individual, and **Eduardo Martinez**, an individual,<br><br>      Defendants. | Case No. 2:20-cv-06587-SB-ADS<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT JAWAD NESHEIWAT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE THE FIRST CAUSE OF ACTION**<br><br>Hearing: January 11, 2021<br>Time: 1:30 p.m.<br>Courtroom: 10-C<br>Judge: Hon. Stanley Blumenfeld, Jr<br>Complaint filed: July 23, 2020 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

I.      INTRODUCTION ........................................................................... 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................... 2

III.    ARGUMENT ................................................................................. 5

        A.      The First-To-File Rule is Inapplicable—Neither Plaintiff Nor Any
                Member Of The Putative Class Is A Member To Nor Will Receive
                Any Redress From The CFPB Enforcement Action ............................ 5

        B.      Res Judicata Does Not Deprive This Court of Jurisdiction ................ 11

        C.      Plaintiff's Class Allegations Should Not Be Dismissed Or Stricken .. 16

        D.      To The Extent The Court Finds That The Complaint Is Deficient,
                Plaintiff Should Be Granted Leave To Amend .................................. 20

IV.     CONCLUSION ............................................................................. 21

## **TABLE OF AUTHORITIES**

*Adoma v. Univ. of Phoenix, Inc.,* 711 F. Supp. 2d 1142 (E.D. Cal. 2010) ...............7

*Alltrade, Inc. v. Uniweld Prod., Inc.,* 946 F.2d 622 (9th Cir. 1991) ........................6

*Am. Bank of N. v. Sullivan*, No. CV-16-08207-PCT-GMS, 2017 WL 3268795 (D. Ariz. Aug. 1, 2017).................................................................................12, 15

*Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955 (N.D. Cal. 2019)..........................7

*British Telecommunications plc v. McDonnell Douglas Corp.,* No. C-93-0677 MHP, 1993 WL 149860 (N.D. Cal. May 3, 1993)......................................11

*Calderon v. Cargill, Inc.,* No. CV137046GHKJEMX, 2013 WL 12205633 (C.D. Cal. Dec. 10, 2013).....................................................................................6, 7

*Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) ......................................................16, 17

*Cholakyan v. Mercedes-Benz USA, LLC,* 796 F. Supp. 2d 1220 (C.D. Cal. 2011).........................................................17

*Cruz v. Sky Chefs, Inc.,* No. C-12-02705 DMR, 2013 WL 1892337 (N.D. Cal. May 6, 2013)....................................................................................................17

*EDS Fin. Servs., Inc. v. Kroop,* No. SACV171042DOCJCGX, 2018 WL 5880077 (C.D. Cal. Apr. 10, 2018) .............................................................................13

*Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003)................20

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005)..................12

*Grotewold v. Cty. of San Bernardino*, No. CV-10-6812- RHW, 2010 WL 11553022 (C.D. Cal. Dec. 17, 2010) .............................................................................16

*In re Land Rover LR3 Tire Wear Prod. Liab. Litig.,* No. MDL 09-2008 AG, 2012 WL 5473736 (C.D. Cal. Oct. 24, 2012) ......................................................17

*Kamm v. California City Development Co.,* 509 F.2d 205 (9th Cir. 1975)............18

*Kennedy v. Full Tilt Poker,* No. CV0907964MMMAGRX, 2012 WL 13071634

(C.D. Cal. Aug. 24, 2012) ........................................................................7, 10

*Khorrami v. Lexmark Int'l Inc.,* No. CV 07-01671 DDP RCX, 2007 WL 8031909

 (C.D. Cal. Sept. 13, 2007) ....................................................................17

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.,* 787 F.3d 1237 (9th Cir.

 2015).......................................................................................................6

*Montana Envtl. Info. Ctr. v. Bernhardt*, No. CV19130BLGSPWTJC, 2020 WL

 4346604 (D. Mont. July 29, 2020) ..............................................6, 7, 10

*Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074 (9th Cir. 1990) ...........20

*Nickerson v. Goodyear Tire &amp; Rubber Corp.,* No. 820CV00060JLSJDE, 2020

 WL 4937561 (C.D. Cal. June 3, 2020).........................................................17

*Paulo v. Holder,* 669 F.3d 911 (9th Cir. 2011) .......................................................12

*Pepka v. Kohl's Dep't Stores, Inc.,* No. CV164293MWFFFMX, 2016 WL 8919460

 (C.D. Cal. Dec. 21, 2016)....................................................................17

*Poertner v. Gillette Co.,* No. 612CV803ORL31DAB, 2012 WL 12898875 (M.D.

 Fla. July 9, 2012)........................................................................................7

*Priddy v. Lane Bryant, Inc.,* No. 08-06889 MMM (CWX), 2008 WL 11410109

 (C.D. Cal. Nov. 24, 2008) ....................................................................11

*Riffel v. Regents of the Univ. of California,* No. 219CV08286CASRAOX, 2019 WL

 5978784 (C.D. Cal. Nov. 12, 2019) ..............................................................10

*Stez v. J. Heinz Co*., No. C 14-1871 PJH, 2014 WL 5020573 (N.D. Cal. Oct. 7,

 2014).........................................................................................................11

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ....................................................12, 15

*Ward v. Apple Inc.,* 791 F.3d 1041 (9th Cir. 2015).............................................20

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.,* No. 19- CV-07123-PJH, 2020 WL

 4016812 (N.D. Cal. July 16, 2020) ..............................................................20

*Wojciechowski v. Kohlberg Ventures*, LLC, 923 F.3d 685 (9th Cir. 2019) ...........14

*Zaklit v. Nationstar Mortg. LLC,* No. 515CV2190CASKKX, 2017 WL 3174901
(C.D. Cal. July 24, 2017) ................................................................................9

*Zeppeiro v. Ditech Fin. LLC*, No. CV1804183SJOAGR, 2018 WL 6265103 (C.D.
Cal. Aug. 20, 2018) ...........................................................................13, 15

**STATUTES & AUTHORITY**

15 U.S.C. § 1681b, *et seq.* ...........................................................................1, 18

15 U.S.C. § 1681n, *et seq.* .........................................................................10, 13

12 U.S.C. § 5564 ............................................................................................13

## I.     INTRODUCTION

This case challenges the Defendants' unlawful procurement and use of consumer reports. That is, between 2017 and 2019, Defendants Jawad Nesheiwat ("Nesheiwat"), Sean Cowell ("Cowell"), Thomas Chou ("Chou"), Mikael Van Loon ("Van Loon"), Eduardo "Ed" Martinez ("Martinez"), Lend Tech Loans, Inc. ("Lend Tech"), and Chou Team Realty, LLC d/b/a MonsterLoans ("MonsterLoans") (collectively "Defendants") illegally obtained the consumer reports of Plaintiff Erica Reiners ("Plaintiff" or "Reiners") and millions of consumers and used them in a scheme targeting student loan borrowers—all in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, *et seq.* ("FCRA" or "Act"). Rather than answer for his actions, Defendant Nesheiwat now seeks an early exit from the case.

Underlying each of Nesheiwat's arguments is the erroneous contention that the Consumer Financial Protection Bureau's ("CFPB") enforcement action, *Bureau of Consumer Financial Protection v. Chou Team Realty LLC, et al.*, Case No. 8:20-cv-00043-SB-ADS (C.D. Cal. filed January 9, 2020) (hereafter "CFPB enforcement action" or "CFPB action"), precludes this Court from hearing the instant case. Nesheiwat argues that the first-to-file rule requires dismissal because, supposedly, both cases allege the same claims, seek the same relief, and are filed on behalf of the same class of persons. This attack fails. While the CFPB action may be premised on the same set of facts, the claims involve disparate legal interests and relief. Further, neither Plaintiff nor any member of the purported class is a party to the CFPB's enforcement action and most of the class members, if not all of them, will receive no redress from the CFPB action. As such, dismissal under the first-to-file rule is inappropriate.

Nesheiwat next asserts that res judicata deprives this Court of subject matter jurisdiction, but this attack also falls short. Put simply, no final judgment has been entered with respect to Nesheiwat in the CFPB action, and Plaintiff is not a party to

the case nor is she in privity with the CFPB.

Nesheiwat's final two arguments ask that Plaintiff's "class action claim" be dismissed or stricken. These arguments also fail. First, given that a class action is not a claim but rather a procedural device, courts agree that Rule 12(b)(6) motions are inappropriate to address class allegations. Further, Nesheiwat's motion to strike fails because he has not carried his burden to demonstrate how certification would be impossible on the face of the Complaint.

As explained further below, Nesheiwat's motion should be denied in its entirety.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant Nesheiwat was the co-founder and chief operating officer of Defendant MonsterLoans. (Compl. ¶ 14.) Nesheiwat—along with co-Defendants Cowell, Chou, Van Loon, Martinez, Lend Tech, and MonsterLoans—engaged in a scheme to obtain consumer reports from Experian Information Solutions, Inc. ("Experian") absent any permissible purpose to solicit consumers to purchase fee-based document preparation services. (*Id.* ¶ 5-6.)

 Initially, Defendants utilized MonsterLoans's Experian account to obtain reports for this scheme. (*Id.* ¶ 22.) In or around June 2017, however, Defendants set out to establish a separate entity to conceal the unlawful procurement of consumer reports. (*Id.* ¶¶ 26, 27.) For his part, in an email dated May 11, 2017, Nesheiwat stressed the need to create a stand-alone entity to circumvent Experian's internal controls and explained that he needed "to have a story behind it to make sense for the volume of data." (*Id.* ¶ 24.) Nesheiwat continued by stating "Its [sic] very important to me personally with the risk involved to cover my butt." (*Id.*)

In or around June 2017, Defendants created Lend Tech for the sole purpose of obtaining consumer reports under false pretenses from Experian. (*Id.* ¶¶ 5, 26-27, 91.) To provide the appearance of legitimacy, Defendants falsely claimed that Lend

Tech was a mortgage lender, which intended to use the reports to solicit consumers for mortgage-related firm offers of credit, a permissible purpose under the Act. (*Id.* ¶¶ 5, 27.) But here's the rub: Lend Tech has never engaged in the business of mortgage lending (*id.* ¶ 27), and Lend Tech never provided any consumer with a firm offer of credit (*id.* ¶ 5). Nor did it ever intend to do so.

Instead, Defendants actually obtained the reports via Lend Tech's Experian account for the sole and wholly unrelated purpose of soliciting student loan borrowers to purchase a "fee-based application assistance" service through a web of student loan consolidation entities. (*Id.* ¶ 52.) For a significant fee, these student loan consolidation entities offer to complete documents on behalf of borrowers to consolidate their student loans—paperwork that can be easily completed for free via the Department of Education's website. (*Id.* ¶ 53.) The Department of Education even warns consumers <u>not</u> to fall prey to deceptive practices of companies like these and describes the outfits as "fraudsters who are after your money." (*Id.* ¶ 53, n.1.)

Defendants worked together to operate, direct, and oversee this scheme to generate leads of borrowers to obtain fees. (*Id.* ¶ 54.) Specifically, Defendants participated in obtaining and using consumer reports through Lend Tech's Experian account. (*Id.* ¶ 55.) And Defendants received a share of the profits from the fees collected by the student loan consolidation entities. (*Id.* ¶ 56.) The profits were distributed to the Defendants who possessed ownership interests (sometimes through separate entities) in the debt relief companies. (*Id.* ¶ 56.)

In Plaintiff Reiners's case, on or around August 9, 2018, Defendants, deceptively using Lend Tech's Experian account, obtained her consumer report. (*Id.* ¶ 58.) At no time did Reiners ever provide any authorization to Defendants to obtain her report, nor did they ever possess a permissible purpose for obtaining or using her report.  (*Id.* ¶ 59.) Defendants also never sent her a firm offer of credit. (*Id.* ¶ 60.) Rather, Defendants utilized Plaintiff's report solely to solicit her to purchase student

1  loan related "fee-based application assistance." (*Id.* ¶ 62.) Indeed, Defendants sold or

2  otherwise conveyed her consumer report to Clarity Solutions Center, LLC ("CSC").

3  (*Id.* ¶ 63.) Shortly thereafter, on August 17, 2018, Plaintiff received a letter from

4  CSC soliciting her to purchase Defendants' "fee-based application assistance." (*Id.* ¶

5  64; *see also* Exhibit A to Complaint, Dkt. 1-1.)

6        On July 23, 2020, Plaintiff filed the instant class action complaint seeking

7  damages for Defendants' willful violations of the FCRA on behalf of herself and a

8  class of similarly situated individuals.

9  ***The CFPB Enforcement Action***

10        In his present motion, Nesheiwat likens the present action to the CFPB

11  enforcement action filed against twenty-five (25) defendants (including

12  MonsterLoans, Lend Tech, Chou, Cowell, Nesheiwat, and Martinez)[1] styled *Bureau*

13  *of Consumer Financial Protection v. Chou Team Realty LLC, et al.*, Case No. 8:20-

14  cv-00043-SB-ADS (C.D. Cal. filed January 9, 2020).

15        The CFPB enforcement action was filed under 12 U.S.C. § 5564(a)-(b) to

16  enforce prohibitions on unfair, deceptive, and abusive acts or practices in violation

17  of various federal acts—including violations of the Consumer Financial Protection

18  Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536; the Fair Credit Reporting Act, 15

19  U.S.C. § 1681s; and the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310, as it

20  applies to persons subject to the CFPA, 15 U.S.C. §§ 6102(c), 6105(d). (CFPB

21  Second Amended Complaint, attached as Ex. 2 to Nesheiwat's Motion (hereafter

22  "CFPB Complaint"), Dkt. 38-2 ¶ 8.) Notably, the CFPB enforcement action is a *law*

23  *enforcement action* and does not allege any class claims or join any of the consumers

24  harmed by defendants.

25        To date, the CFPB has entered into three stipulated judgments with various

26  defendants in the enforcement action. On May 14, 2020, the CFPB entered into a

27

28  [1] Defendant Van Loon is not a party to the CFPB enforcement action.

1  stipulated judgment with MonsterLoans, Chou, Cowell, Cre8labs, Inc., and TDK

2  Enterprises, LLC. (First Stipulated Judgment, CFPB Enforcement Action, Dkt. 90,

3  attached as Ex. 3 to Nesheiwat's Motion to Dismiss.) On July 7, 2020, the CFPB

4  entered into a stipulated judgment with Robert Hoose. (Second Stipulated Judgment,

5  CFPB Enforcement Action, Dkt. 115, a true and accurate copy of which is attached

6  to Plaintiff's Request for Judicial Notice ("RJN") as Ex. A.) On October 19, 2020,

7  the CFPB entered into a stipulated judgment with Kenneth Lawson and XO Media,

8  LLC. (Third Stipulated Judgment, CFPB Enforcement Action, Dkt. 162, a true and

9  accurate copy of which is attached to Plaintiff's RJN as Ex. B.)

10        All of the stipulated judgments contemplate redress to only "Affected

11 Consumers," which, as defined by the CFPB, is limited to individuals who "were

12 charged fees" by student loan consolidation entities. (*See* Def. Mot., Ex. 3 ¶¶ 7(a),

13 12; RJN Ex. A ¶¶ 7(a), 12; RJN Ex. B ¶¶ 7(a), 8.) Further, the CFPB has sole

14 discretion over whether to actually provide any redress to the Affected Consumers.

15 (*See* Def. Mot., Ex. 3 ¶ 17; RJN Ex. A ¶ 16; RJN Ex. B ¶ 11.) In the event the CFPB

16 determines that the funds will be distributed, the stipulated judgments provide that

17 the payment of redress cannot be conditioned on the consumer waiving any right.

18 (*See* Def. Mot., Ex. 3 ¶ 18; RJN Ex. A ¶ 17; RJN Ex. B ¶ 12.) Further, two of the

19 judgments—including the only judgment applicable to some of the Defendants in

20 this case (Chou, Cowell, and MonsterLoans)—preclude the setting defendants from

21 arguing that their settlements may be used to offset or reduce penalties in subsequent

22 consumer actions. (*See* Def. Mot., Ex. 3 ¶¶ 7(n), 38; RJN Ex. A ¶¶ 7(k), 31).

23        Based on these facts and as set forth more fully below, the Court should deny

24 Nesheiwat's motion in its entirety.

25 **III.   ARGUMENT**

26        **A.   The First-To-File Rule Is Inapplicable—Neither Plaintiff Nor Any**

27              **Member Of The Putative Class Is A Member To Nor Will They**

28

1                **Receive Any Redress From The CFPB Enforcement Action.**

2         Nesheiwat first argues that this case should be dismissed in favor of the CFPB

3 enforcement action under the first-to-file rule. (Def. Mot. at 6.) In support,

4 Nesheiwat claims that the actions have substantially similar parties because "the

5 defendants in both cases are the same" (*id.* at 7), and that both actions "raise issues

6 that are not just similar, but identical" (*id.*). Neither of these assertions is correct.

7 Despite Nesheiwat's thin recitation of the requisite factors, the first-to-file rule does

8 not apply here.

9         The "first-to-file" rule permits a court to decline jurisdiction "when a

10 complaint involving the same parties and issues has already been filed in another

11 district." *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)

12 (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir.1982)).

13 "The most basic aspect of the first-to-file rule is that it is discretionary[.]" *Id.* As

14 Nesheiwat correctly points out, courts analyze three factors in making a

15 determination of the first-to-file doctrine: "chronology of the lawsuits, similarity of

16 the parties, and similarity of the issues." *Kohn Law Grp., Inc. v. Auto Parts Mfg.*

17 *Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015).

18         The first factor, chronology, is not in dispute. The CFPB filed its enforcement

19 action roughly six months prior to the instant case. Rather, the final two factors

20 render the first-to-file rule inapplicable to this case.

21         The second factor, similarities of the parties, weighs against applying the first-

22 to-file rule here. While the rule does not require exact identities of the parties, they

23 must be "substantially similar." *Montana Envtl. Info. Ctr. v. Bernhardt*, No.

24 CV19130BLGSPWTJC, 2020 WL 4346604, at *3 (D. Mont. July 29, 2020); *see also*

25 *Calderon v. Cargill, Inc.*, No. CV137046GHKJEMX, 2013 WL 12205633, at *1

26 (C.D. Cal. Dec. 10, 2013) (citing *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d

27 1142, 1148 (E.D. Cal. 2010)). In this case, neither Plaintiff nor any member of the

28

putative class is a party to the CFPB enforcement action. This tips heavily against invoking the first-to-file rule. *See Montana Envtl. Info. Ctr*, 2020 WL 4346604, at *3 (declining to apply the first-to-file rule and explaining "Although exact identity of parties is not required, this action involves substantially different parties than the D.C. Action. None of the Plaintiffs in this case are parties to the D.C. Action.").

Additionally, when evaluating the first-to-file rule in context of alleged class actions, courts generally look to the putative classes for similarities. *See Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (*Ross v. U.S. Bank Nat. Ass'n*, 542 F.Supp.2d 1014, 1020 (N.D.Cal.2008) (citing Cal. Jur.3d Actions § 284)) ("[i]n a collective action, the classes, and not the class representatives, are compared."); *Calderon v. Cargill, Inc.*, 2013 WL 12205633, at *1 (citation omitted) ("In the class action context, similarity of the plaintiffs is determined by comparing the putative classes."). Where the classes do not involve substantial overlap, this factor militates against invoking the first-to-file rule. *See Brice v. Plain Green, LLC*, 372 F. Supp. 3d 955, 976 (N.D. Cal. 2019) ("There is undoubtedly some overlap between the parties in the two cases, but that overlap is not so significant as to mandate a stay here."); *Poertner v. Gillette Co.*, No. 612CV803ORL31DAB, 2012 WL 12898875, at *2 (M.D. Fla. July 9, 2012) (refusing to invoke the first-to-file rule in part because "[t]here is no overlap between the class of consumers bringing the action in each case.").

The case *Kennedy v. Full Tilt Poker*, No. CV0907964MMMAGRX, 2012 WL 13071634 (C.D. Cal. Aug. 24, 2012)—which involves the application of the first-to-file rule to a consumer class action and a government enforcement action—is instructive. There, consumers filed a class action seeking damages from Full Tilt Poker on behalf of "all United States residents (excluding residents of Washington State) who played for real money on www.fulltiltpoker.com." *Id.* at *4. Meanwhile, a government forfeiture action sought to obtain moneys to be "disbursed to

1   individuals whose [Full Tilt Poker] accounts were seized on the date the forfeiture
2   action was filed." *Id.* at 10. At the time of the decision, the enforcement action had
3   already reached a settlement, which established a $547,000,000 monetary fund to
4   pay U.S. victims. *Id.* Critically, the plaintiffs and class members who sought
5   remission in the forfeiture action would not be able to recover the remitted amounts
6   as damages in the class action. *Id.* Ultimately, the court reasoned that "while the fact
7   that the actions have been brought by different plaintiffs weighs somewhat against
8   application of the first-to-file rule, it is of less significance because putative class
9   members in the *Ferguson* case will have *the ability to seek full or partial recovery in*
10  *the civil forfeiture action*[.]" *Id.* at 10 (emphasis added).

11          This case is undoubtedly different. That is, Plaintiff and the class members
12  here will receive nothing from the CFPB enforcement action. While the CFPB action
13  has sought to recover funds, the redress being sought is expressly limited to
14  "Affected Consumers", which only includes individuals who "were charged fees" by
15  student loan consolidation entities. (*See* Def. Mot., Ex. 3 ¶¶ 7(a), 12; RJN Ex. A ¶¶
16  7(a), 12; RJN Ex. B ¶¶ 7(a), 8.) The case at bar concerns consumers who had their
17  consumer reports unlawfully obtained—irrespective of whether they were charged
18  fees. Hence, as discovery will confirm, Affected Consumers (as defined by the
19  CFPB) likely represent a small fraction[2] of the putative class—and certainly not of a

20  ――――――――――――
21  [2] While discovery will reveal the exact portion of the proposed class that actually
     paid fees to Defendants, CFPB filings suggest that the number is exceptionally low.
22  That is, the CFPB complaint alleges that between 2015 and 2017 the Defendants
     utilized MonsterLoans's Experian account to obtain 7 million consumer reports.
23  (Def. Mot., Ex. 2 ¶¶ 57-58.) During that same period, Defendants took in $15 million
     in illegal advance fees, while charging consumers fees that ranged between $699 and
24  $999. (*Id.* ¶¶ 106, 111.) Thus, of the 7 million consumers whose reports were
25  obtained, between 0.21 percent and 0.31 percent actually paid fees to Defendants.
     This rate is further supported by an email sent from Anthony Sebreros, another
26  individual involved in Defendants' scheme, to co-Defendant Van Loon, which states
27  that the response rate with "fresh data" (or consumer reports) is 0.75 percent. (*See*
     Sebreros Email, a true and accurate copy of which is attached to Plaintiff's RJN as
28

sufficient quantity to constitute substantial overlap for purposes of the first-to-file rule. Indeed, Defendants purchased <u>millions</u> of consumer reports to facilitate its scheme to obtain fees from borrowers yet only a fraction of those consumers actually paid fees. In short, given that approximately 99.7% of the proposed class paid no fees and will receive no distributions of the funds recouped by the CFPB, the Court should refuse to find substantial overlap between the class and the CFPB action.

Moreover, whether the funds will be distributed at all is unclear and left solely to the CFPB's discretion. (*See* Def. Mot., Ex. 3 ¶ 17; RJN Ex. A ¶ 16; RJN Ex. B ¶ 11.) And even if the funds are distributed, the stipulated judgments provide that payments cannot be conditioned on consumers waiving any rights. (*See* Def. Mot., Ex. 3 ¶ 18; RJN Ex. A ¶ 17; RJN Ex. B ¶ 12.) Two of the judgments, including the only judgment applicable to any of the defendants in this case, preclude the settling defendants from arguing to offset or reduce penalties in subsequent consumer actions. (*See* Def. Mot., Ex. 3 ¶¶ 7(n), 38; RJN Ex. A ¶¶ 7(k), 31.) Hence, the acceptance of any funds from the CPFB will have <u>no</u> impact on the damages sought in this case.

In short, neither Plaintiff nor any member of the putative class is a party to the CFPB enforcement action, and almost none of the putative class members will be entitled to recover any funds from the CFPB action. Moreover, to the extent necessary, Plaintiff can narrow her class definition at the certification stage to exclude all individuals who receive redress from the CFPB action. *See Zaklit v. Nationstar Mortg. LLC*, No. 515CV2190CASKKX, 2017 WL 3174901, at *8 (C.D. Cal. July 24, 2017) (collecting cases) ("courts routinely permit plaintiffs to narrow the scope of their class at the certification stage."). As such, this factor weighs decisively against invoking the first-to-file rule.

---

Ex. C at pg. 2.) Of those responses, Defendants had a 27 percent "close rate" (*id.*), which works out to 0.20 percent take rate.

1    The third factor, similarity of the issues, also weighs against the application of

2  the first-to-file rule. "Substantial similarity exists where the two cases rest on

3  identical factual allegations and assert identical or analogous claims." *Kennedy v.*

4  *Full Tilt Poker*, No. CV0907964MMMAGRX, 2012 WL 13071634, at *9 (C.D. Cal.

5  Aug. 24, 2012). Generally, "[c]ases are sufficiently similar where key issues overlap

6  and the resolution of one case could affect the resolution of the other." *Riffel v.*

7  *Regents of the Univ. of California*, No. 219CV08286CASRAOX, 2019 WL

8  5978784, at *5 (C.D. Cal. Nov. 12, 2019) (citation omitted). However, where the

9  second action asserts claims that are broader, the first-to-file rule does not apply. *See*

10  *Montana Envtl. Info. Ctr. v. Bernhardt*, No. CV19130BLGSPWTJC, 2020 WL

11  4346604, at *3 (D. Mont. July 29, 2020) (collecting cases) ("Courts have recognized

12  that the first-to-file rule may not apply where the second-filed action is broader than

13  the first action.").

14    Although both cases arise from similar facts, the claims involve different

15  interests and relief. Here, Plaintiff has filed a claim under Section 1681n seeking

16  damages for invasions of privacy she and others suffered as a result of Defendants'

17  violations of the FCRA. Conversely, the CFPB filed suit under Section 1681s—an

18  administrative enforcement provision that no consumer has standing to seek relief

19  under—to put an end to unfair, deceptive, and abusive acts or practices, including its

20  charging of (frankly outlandish) fees. (CFPB Complaint, Def. Mot., Ex. 2 ¶ 8.) Thus,

21  while both claims are premised on violations of the FCRA, the interests asserted in

22  both cases are distinct: Plaintiff's interests in redressing past invasions of privacy

23  rights is distinct from the government's interest in discouraging fee-based scams.

24    Further, the relief sought is different. As previously explained, the CFPB

25  enforcement action is only seeking to recoup moneys paid by consumers to student

26  loan entities—or *actual* damages. Here, on the other hand Plaintiff seeks *statutory*

27  damages for willful violations of Section 1681n. Again, even if the CFPB prevails,

28

1  neither Plaintiff nor more than 99.7 percent of the class will receive any relief from

2  the CFPB action. And even if some of the class members were to receive funds from

3  the CFPB action, the settlements specifically forbid the settling defendants from

4  using the payments to offset or reduce damages in a subsequent civil action. Because

5  the resolution of the CFPB action will not affect the resolution of the present case,

6  the issues are materially different.

7         Plaintiff also seeks injunctive relief under Cal. Bus. & Prof. Code § 17200.

8  The state law claim further differentiates this case from the CFPB action. *See Stez v.*

9  *J. Heinz Co.*, No. C 14-1871 PJH, 2014 WL 5020573, at *2 (N.D. Cal. Oct. 7, 2014)

10 ("The plaintiffs are not the same, and the issues are different, as the complaint in this

11 action has now been amended to add claims under Florida law. Thus, the first-to-file

12 rule does not support transfer."). This too militates against applying the first-to-file

13 rule here.

14        Finally, to the extent the Court finds that the first-to-file rule does apply,

15 dismissal is not an appropriate remedy. Courts have broad discretion to transfer, stay,

16 or dismiss the action. *Priddy v. Lane Bryant, Inc.*, No. 08-06889 MMM (CWX),

17 2008 WL 11410109, at *9 (C.D. Cal. Nov. 24, 2008). It is all but certain that any

18 result in the CFPB enforcement action will not benefit the vast majority of the class

19 members. And dismissal in the face of uncertainty—especially where it may result in

20 no recourse for the wrongful conduct (as is the case here)—is inappropriate. *British*

21 *Telecommunications plc v. McDonnell Douglas Corp.*, No. C-93-0677 MHP, 1993

22 WL 149860, at *5 (N.D. Cal. May 3, 1993). As such, at most the Court should

23 consider a less drastic result.

24    **B.    Res Judicata Does Not Deprive This Court Of Jurisdiction.**

25        Nesheiwat next argues for dismissal under Rule 12(b)(1) arguing that the

26 doctrine of res judicata deprives this Court of subject matter jurisdiction. (Def. Mot.

27 at 9-13.) According to Nesheiwat, there is no "case or controversy" under Article III

28

1   because "the Prior Action Judgment has been entered regarding the same damages."

2   (*Id.* at 12.) Nesheiwat claims that "the principles of collateral estoppel (or issue

3   preclusion) and *res judicata* (or claim preclusion) prevents Plaintiff from relitigating

4   issues of claims" relating to the Prior Action Judgment because "the [CFPB] is

5   asserting the rights of the same class of persons as those alleged in this Action. (*Id.*)

6   He also asserts that "all the issues litigated under FCRA in the Prior Action are the

7   same as those issues in Action." (*Id.* at 12-13.) These assertions are incorrect.

8        "Res judicata encompasses the doctrines of claim preclusion and issue

9   preclusion." *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011) (citing *Taylor v.*

10  *Sturgell*, 553 U.S. 880, 892 & n. 5, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). Under

11  the doctrine of claim preclusion, "a final judgment forecloses 'successive litigation

12  of the very same claim, whether or not relitigation of the claim raises the same issues

13  as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). In contrast, issue

14  preclusion "bars 'successive litigation of an issue of fact or law actually litigated and

15  resolved in a valid court determination essential to the prior judgment,' even if the

16  issue recurs in the context of a different claim." *Id.*

17       Fatal to Nesheiwat's motion is the fact that res judicata "is not a jurisdictional

18  matter." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)

19  (citing Fed. R. Civ. P. 8(c)); *see also Janik v. Saldate*, 231 F. App'x 542, 542-43 (9th

20  Cir. 2007) (The district court granted the City of Tucson's motion to dismiss for lack

21  of subject matter jurisdiction, citing issue preclusion as the reason. This was error

22  because "[p]reclusion, of course, is not a jurisdictional matter."). This alone is a

23  sufficient reason to deny the motion.

24       Rather, res judicata "is an affirmative defense." *Taylor*, 553 U.S. at 907 (citing

25  Fed. R. Civ. P. 8(c)). And the burden "to plead and prove such a defense" falls to the

26  party seeking to assert it. *Id.*; *see also Am. Bank of N. v. Sullivan*, No. CV-16-08207-

27  PCT-GMS, 2017 WL 3268795, at *2 (D. Ariz. Aug. 1, 2017) ("The party seeking to

28

assert res judicata bears the burden of proving these elements."). "To raise a successful res judicata defense under federal law, a defendant must satisfy three elements: (1) an identity of claims, (2) a final judgment on the merits in the first action, and (3) privity between the parties involved in both lawsuits." *EDS Fin. Servs., Inc. v. Kroop*, No. SACV171042DOCJCGX, 2018 WL 5880077, at *4 (C.D. Cal. Apr. 10, 2018) (citing *Tahoe-Sierra Pres. Council, Inc. v Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)). Nesheiwat's motion fails to recognize, let alone meet, this burden. Nevertheless, Plaintiff briefly addresses each element in turn.

### Identity Of Claims

Courts analyze four factors to determine if there is an identity of claims: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Zeppeiro v. Ditech Fin. LLC*, No. CV1804183SJOAGR, 2018 WL 6265103 (C.D. Cal. Aug. 20, 2018) (citing *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011)).

The claims at issue are distinguishable. As discussed more fully in Section A, *supra*, it is true that this case arises out of the same fact pattern as the CFPB case and will likely have overlapping evidence. The rights and interests established in the prior judgment will not be impaired by the current action, however. Not to belabor the point, but the cases involve separate rights: on the one hand, Plaintiff seeks to enforce her and the class member's privacy rights under 15 U.S.C. § 1681n, while on the other hand the CFPB is proceeding under its authority set forth in 12 U.S.C. § 5564 to enforce federal consumer financial laws. Further, even if consumers receive

1  redress from the CFPB action, the prior judgments do not require them to waive any

2  rights. As such, the instant case will not impair any rights or interests established in

3  the prior judgments, which, as explained next, are not even applicable to Nesheiwat.

4  **Final Judgment In First Action**

5  No "final judgment" has been entered in the CFPB case. Rather, a stipulated

6  judgment, "unlike a judgment imposed at the end of an adversarial proceeding,

7  receives its legitimating force from the fact that the parties consented to it."

8  *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019).

9  Parties to a settlement "can limit the scope of the preclusive effect of a dismissal

10  with prejudice by its terms." *Id.* Generally, courts look "to the intent of the settling

11  parties to determine the preclusive effect of a dismissal with prejudice entered in

12  accordance with a settlement agreement, rather than to general principles of claim

13  preclusion." *Id.*

14  Here, the CFPB action's stipulated judgments have no relationship to Plaintiff

15  or Nesheiwat. That is, neither Plaintiff nor Nesheiwat is a party to those stipulated

16  judgments.[3] As such, it is unclear how any "final judgment" has been reached with

17  respect to the claims asserted against Nesheiwat. And regardless, the stipulated

18  settlements themselves clearly contemplate the occurrence of future "related

19  consumer action[s]". (*See* Def. Mot., Ex. 3 ¶¶ 7(n), 38; RJN Ex. A ¶¶ 7(k), 31.)

20  Again, the stipulated judgments expressly preclude the settling defendants from

21  arguing to "offset" or reduce any monetary penalties in the subsequent related

22  consumer actions by the penalties imposed in the CFPB action. (*See* Def. Mot., Ex. 3

23  ¶¶ 7(n), 38; RJN Ex. A ¶¶ 7(k), 31.) Hence, the plain terms of the stipulated

24  judgments demonstrate that the settling defendants did not intend for them to have a

25  _____

26  [3] The CFPB has entered into stipulated judgments with MonsterLoans, Chou, and

27  Cowell as well as additional non-parties: Cre8labs, Inc., TDK Enterprises, LLC,
   Robert Hoose, Kenneth Lawson, and XO Media, LLC. (*See* Def. Mot., Ex. 3; RJN

28  Ex. A; RJN Ex. B.)

preclusive effect on subsequent consumer actions. For these reasons, no final judgment has been entered in the CFPB case that would have any preclusive effect here.

### *Privity Among The Parties*

The final element, which asks whether the parties are the same or in privity, is also not met. "By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," res judicata protects against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor*, 553 U.S. at 892 (citation omitted). However, "[a] person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit." *Id.* Thus, the application of either claim or issue preclusion runs contrary to the "deep-rooted historic tradition that everyone should have his own day in court." *Id.* at 892-93.

"In rare instances, a non-party may be bound by a final judgment." *Am. Bank of N. v. Sullivan*, No. CV-16-08207-PCT-GMS, 2017 WL 3268795, at *3 (D. Ariz. Aug. 1, 2017) (citation omitted). The Supreme Court has identified six categories of exceptions to the rule against nonparty preclusion, including where:

> (1) the nonparty contractually agrees to be bound by the judgment; (2) there is a "substantive legal relationship" between the party to be bound and a party to the judgment; (3) the party "adequately represented" the nonparty's interests; (4) the nonparty "assumed control" over the initial litigation; (5) the nonparty is now relitigating as a proxy for the party; or (6) a statutory scheme prohibits "successive litigation by nonlitigants.

*Zeppeiro v. Ditech Fin. LLC*, No. CV1804183SJOAGR, 2018 WL 6265103, at *3 (C.D. Cal. Aug. 20, 2018), aff'd, 781 F. App'x 676 (9th Cir. 2019) (citing *Taylor v.*

*Sturgell*, 553 U.S. 880, 893-95 (2008)).

Here, none of the exceptions apply. Rather than confront this reality, Nesheiwat asserts that the CFPB "is asserting the rights of the same class of persons as those alleged in this Action." (Def. Mot. at 12.) Hence, it appears Nesheiwat is attempting to invoke the third exception, or adequate representation. As set forth more fully in Section A, *supra*, the CFPB action sought to recoup damages for only the individuals who paid fees to student loan consolidation entities. Thus, neither Plaintiff nor more than 99 percent of the putative class members will receive any redress from the CFPB action.

But the more fundamental flaw in Nesheiwat's argument is that the CFPB case is not a class action at all. Instead, it is a government enforcement action, and this sort of "virtual representation" argument is exactly what the Supreme Court did away with in *Taylor*. *See Grotewold v. Cty. of San Bernardino*, No. CV-10-6812-RHW, 2010 WL 11553022 (C.D. Cal. Dec. 17, 2010) (citing *Taylor*, 553 U.S. at 904) ("The Supreme Court has since rejected "virtual representation" as a basis for finding privity in the preclusion context.").

Given that res judicata is not a jurisdictional matter and that none of the elements are met, the Court should deny Nesheiwat's Motion.

**C.    Plaintiff's Class Allegations Should Not Be Dismissed Or Stricken.**

Nesheiwat closes by moving to dismiss Plaintiff's "class action claim" pursuant to Rule 12(b)(6) (def. mot. at 13-19), or to strike the class allegations pursuant to Rule 12(f) (*id.* at 19-20). Neither is appropriate at this juncture.

Similar to Nesheiwat's Rule 12(b)(1) motion, Rule 12(b)(6) is likewise not an appropriate vehicle to challenge class allegations. *See, e.g., Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014) (collecting cases) ("VSS cites no binding authority, and the Court is aware of none, authorizing a defendant to use the 12(b)(6) vehicle to defeat

1   class certification."); *Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2013 WL

2   1892337, at *5 (N.D. Cal. May 6, 2013) ("Sky Chefs fails to identify any Ninth

3   Circuit authority permitting the use of a Rule 12 motion to dismiss class

4   allegations."). Rather, Rule 12(b)(6) motions challenge pleadings that fail "to state a

5   claim upon which relief can be granted", however, "class treatment is a 'procedural

6   device,' not a claim for relief." *Casas v. Victoria's Secret Stores, LLC*, 2014 WL

7   12708972, at *9.

8         While courts may strike class allegations, "it is in fact rare to do so in advance

9   of a motion for class certification." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.

10  Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases). Striking class allegations

11  absent discovery is only appropriate when "no class action can possibly be

12  maintained on the face of the pleading." *Pepka v. Kohl's Dep't Stores, Inc.*, No.

13  CV164293MWFFFMX, 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016)

14  (collecting cases); *see also Cholakyan*, 796 F. Supp. 2d at 1246; *Khorrami v.*

15  *Lexmark Int'l Inc.*, No. CV 07-01671 DDP RCX, 2007 WL 8031909, at *2 (C.D.

16  Cal. Sept. 13, 2007) ("Because striking is severe and disfavored, many courts have

17  declined to so rule solely on the basis of the allegations in a complaint, preferring to

18  address the propriety of the class action at a later stage in the litigation."). The better

19  course of action is "to analyze the elements of the parties' substantive claims and

20  review facts revealed in discovery in order to evaluate whether the requirements of

21  Rule 23 have been satisfied." *Nickerson v. Goodyear Tire & Rubber Corp.*, No.

22  820CV00060JLSJDE, 2020 WL 4937561, at *11 (C.D. Cal. June 3, 2020) (citing *In*

23  *re Ford Motor Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 338 (D.N.J.

24  1997)).

25        To prevail on a motion to strike class allegations, it is "the defendant who

26  must bear the burden of proving that the class is not certifiable." *In re Land Rover*

27  *LR3 Tire Wear Prod. Liab. Litig.*, No. MDL 09-2008 AG, 2012 WL 5473736, at *2

28

1   (C.D. Cal. Oct. 24, 2012) (citation omitted). Once again, Nesheiwat's motion

2   doesn't even recognize, let alone meet, this burden. Instead, he tosses out a

3   hodgepodge of "reasons" why a class supposedly can't be certified. All of these

4   reasons fail.

5          First, Nesheiwat claims that the proposed class definition is "untenable and

6   too indefinite" because limiting the class to individuals whose reports were received

7   for the same purported "permissible purpose" makes class membership "subjective".

8   (Def. Mot. at 15-16.) However, a "permissible purpose" is not a subjective

9   limitation. Just the opposite is true: the FCRA identifies the specific circumstances

10  that a report may be furnished in 15 U.S.C. § 1681b(a). These circumstances are

11  referred to as "permissible purposes." *See* 15 U.S.C. § 1681b. In this case,

12  Defendants obtained the reports by falsely claiming that they would be used to make

13  a firm offer of credit, a permissible purpose under the Act. (Compl. ¶ 51.)

14  Accordingly, there is nothing subjective about the permissible purpose that

15  Defendants utilized to obtain the reports—at the appropriate time, Plaintiff will

16  demonstrate, based on classwide proof, that Defendants failed to have a permissible

17  purpose for any of the class members.

18         Second, relying on *Kamm v. California City Development Co.*, 509 F.2d 205

19  (9th Cir. 1975), Nesheiwat claims that "superiority of the class action device is

20  lacking" because the "scope of the Prior Action fully encompasses the Present

21  Action". (Def. Mot. at 15-16.) Nesheiwat's reliance on *Kamm* is misplaced. First, the

22  *Kamm* defendants sought relief under Federal Rule 23. *Kamm*, 509 F.2d at 207.

23  Nesheiwat inappropriately seeks dismissal under Rule 12. Further, in *Kamm*, the

24  prior government action has already obtained "[s]ignificant relief", including

25  obtaining "restitution to many members of the class[.]" *Id.* at 212. The same cannot

26  be said here. The CFPB enforcement action neither fully encompasses nor

27  substantially overlaps with the present action and the vast majority, if not all, of the

28

1  class members will receive nothing from the CFPB action. And to the extent

2  necessary, Plaintiff can amend her class definition to exclude any individuals that

3  have received redress from the CFPB.

4        Third, Nesheiwat asserts that Plaintiff "cannot eliminate the risk of

5  inconsistent or varying adjudications presented by the Pending Action" and "cannot

6  eliminate the risk of adjudications of unrepresented members presented by the

7  Pending Action". (Def. Mot. at 18.) Again, no member of the class is a member to

8  the CFPB action. And even the small fraction of individuals who may receive some

9  miniscule portion of the CFPB funds, those individuals will not be required to waive

10  any rights, and, if necessary, Plaintiff can amend her class definition to exclude

11  individuals who receive funds from the CFPB action. Thus, these attacks similarly

12  fail.

13        Next, Nesheiwat claims that after the Court "strikes the First Cause of Action

14  (class action)" it will no longer possess subject matter jurisdiction over the second

15  cause of action. (Def. Mot. at 18, 19-20.) Plaintiff's UCL claim is admittedly part of

16  the same case or controversy that underlies her FCRA claim. Having said that,

17  however, Plaintiff is asserting a claim for a violation of the FCRA. (Compl. ¶¶ 76-

18  87.) Procedurally, the claim is asserted on behalf of herself and a class of similarly

19  situated individuals. Thus, even if the Court were to strike the class allegations, the

20  FCRA cause of action would still remain. Because Nesheiwat has failed to

21  demonstrate why Plaintiff's FCRA claim should be stricken or dismissed, her UCL

22  claim survives as well.

23        Finally, Nesheiwat posits that the Complaint lacks all necessary parties

24  because student loan entities who "allegedly obtained monies from Plaintiff and the

25  other class members" have not been joined. (Def. Mot. at 18-19.) This argument

26  misunderstands the Complaint. Contrary to Defendant's assertion, Plaintiff has not

27  alleged that any of the student loan entities "obtained monies" from her. Instead,

28

1  Plaintiff has filed this suit to redress the illegal procurement of her report by

2  Defendants. The Rule 19 inquiry focuses on whether "complete relief" can be

3  afforded among the existing parties. *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, No. 19-

4  CV-07123-PJH, 2020 WL 4016812, at *18 (N.D. Cal. July 16, 2020). Nesheiwat has

5  made no showing as to how complete relief cannot be afforded. Conversely, even if

6  the student loan entities were made parties, the claims would be separate from the

7  existing claims and based on each entity's subsequent use of the reports. Plaintiff

8  doesn't allege that the student loan entities had a hand in procuring the reports. And

9  to the extent that Nesheiwat claims that the student loan entities are jointly liable for

10  his violations of the Act, "it is not necessary for all joint tortfeasors to be named as

11  defendants in a single lawsuit." *Ward v. Apple Inc.*, 791 F.3d 1041, 1048 (9th Cir.

12  2015) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 7, 111 S.Ct. 315, 112 L.Ed.2d

13  263 (1990); Fed. R. Civ. P. 19). In sum, the student loan entities are not necessary

14  parties within the meaning of Rule 19.

15      In the end, Nesheiwat fails to put forward any meaningful reason to dismiss or

16  strike the allegations. Instead, he again attempts to draw a false equivalency between

17  this action and the CFPB action. The Court should reject this misguided attempt to

18  escape liability.

19      **D.   To The Extent The Court Finds That The Complaint Is Deficient,**

20          **Plaintiff Should Be Granted Leave To Amend.**

21      "[L]eave to amend "shall be freely given when justice so requires,"

22  Fed.R.Civ.P. 15(a), and this policy is to be applied with extreme liberality."

23  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

24  "Dismissal with prejudice and without leave to amend is not appropriate unless it is

25  clear on de novo review that the complaint could not be saved by amendment."

26  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1-52 (9th Cir. 2003). To the

27  extent the Court determines that Plaintiff's complaint should be dismissed, Plaintiff

28

1  respectfully requests leave to amend to cure any defects.

2  **IV.   CONCLUSION**

3        Nesheiwat's motion should be denied in its entirety. Despite Nesheiwat's

4  assertions to the contrary, the class proposed by Plaintiff is not subsumed by the

5  CFPB action, and the issues and relief sought diverge significantly. Accordingly, the

6  Court should deny Nesheiwat's motion and order such additional relief as it may

7  deem necessary and just.

8

9                                        Respectfully submitted,

10                                       **Erica Reiners**, individually and on behalf of
                                         all others similarly situated,
11

12  Dated: <u>December 18, 2020</u>          <u> /s/ Taylor T. Smith          </u>
13                                        One of Plaintiff's Attorneys

14

15                                        Aaron D. Aftergood (239853)
                                              aaron@aftergoodesq.com
16                                        The Aftergood Law Firm
                                          1880 Century Park East, Suite 200
17                                        Los Angeles, CA 90067
                                          Telephone: (310) 550-5221
18                                        Facsimile: (310) 496-2840

19                                        Taylor T. Smith (*admitted pro hac vice*)
                                              tsmith@woodrowpeluso.com
20                                        Woodrow & Peluso, LLC
                                          3900 East Mexico Avenue, Suite 300
21                                        Denver, Colorado 80210
                                          Telephone: (720) 907-7628
22                                        Facsimile: (303) 927-0809

23                                        *Counsel for Plaintiff and the Class*

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on December 18, 2020.

*/s/ Taylor T. Smith*