1  Aaron D. Aftergood (239853)
        aaron@aftergoodesq.com
2  **THE AFTERGOOD LAW FIRM**
   1880 Century Park East, Suite 200
3  Los Angeles, CA 90067
   Telephone: (310) 550-5221
4  Facsimile: (310) 496-2840

5  [Additional counsel appearing on signature page]

6  Attorneys for Plaintiff and the Classes

7
                    **UNITED STATES DISTRICT COURT**
8                   **CENTRAL DISTRICT OF CALIFORNIA**

9  | **Erica Reiners,** individually and on behalf of all others similarly situated, | Case No. 2:20-cv-06587-SB-ADS |
10 | | |

| | |
|---|---|
| **Erica Reiners,** individually and on behalf of all others similarly situated, | Case No. 2:20-cv-06587-SB-ADS |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH DECEMBER 8, 2021 ORDER (Dkt. 92)** |
| v. | |
| **Chou Team Realty, LLC** d/b/a **MonsterLoans**, a California limited liability company, **Lend Tech Loans, Inc.**, a California corporation, **Sean Cowell**, an individual, **Thomas Chou**, an individual, **Mikael Van Loon**, an individual, **Jawad Nesheiwat**, an individual, and **Eduardo Martinez**, an individual, | [Discovery Document: Referred to Magistrate Judge Autumn D. Spaeth] |
| | Date: February 16, 2022 Time: 10:00 a.m. Place: Courtroom 6B, 6th Floor Complaint filed: July 23, 2020 Discovery Cutoff: February 24, 2022 |
| Defendants. | |

Plaintiff Erica Reiners ("Plaintiff" or "Reiners") files this supplemental memorandum in response to the Court's February 3, 2022, Order requesting further briefing. (Dkt. 99.) In its Order, the Court requested further explanation as to how the evidence produced by Plaintiff provides a colorable basis to believe that further documents exist with respect to each request. (*Id.*) The Court also requested clarity regarding the specific discovery sanction sought by Plaintiff. (*Id.*)

First, the evidence produced by Plaintiff provides a colorable basis to believe that further documentation exists that is responsive to four separate requests.

Indeed, the evidence demonstrates that Sales Speek has withheld documents relating to its relationship with the remaining defendants and the student loan entities ("SLEs") as well as records relating to payments that it received from the SLEs (such as tax filings and bank statements).

Second, Plaintiff requests that the Court certify the facts set forth below for a contempt hearing. While magistrates do not possess the authority to enter a contempt finding, they may certify facts for a contempt hearing in front of a district judge. Here, Sales Speek repeatedly ignored the subject subpoena (a court order), and even after it was compelled to provide a complete response, Sales Speek again ignored the Order compelling compliance and claimed, despite clear evidence to the contrary, that no responsive documents exist. By repeatedly refusing to produce responsive information, Sales Speek has violated not one, but two, court orders. As such, this Court should certify the facts for a contempt hearing in this case.

### A.   Sales Speek's Response Remains Deficient With Respect To The Following Four Requests.

Plaintiff disputes Sales Speek's claim that it lacks any responsive documents relating to the following discovery requests.

**Request No. 1** – *All DOCUMENTS sufficient to IDENTIFY YOUR complete relationship with each of the DEFENDANTS in this action, including all contracts, agreements, and communications.*

As to the first request, Plaintiff has already identified copies of responsive documents, including limited partnership agreements relating to two SLEs, Direct Document Solutions, LP ("DDS") and Assure Direct Services, LP ("Assure Direct"). (*See* Dkt. 87-2.) As explained in the stipulation regarding the motion to compel, the defendants in this action established a series of SLEs to operate as front-end companies to solicit consumers to pay fees for document preparation

services. To obtain their share of the profit, defendants held interests in each of the SLEs through separate entities. In Nesheiwat's case, he held his interest through the entity, Sales Speek. (*See id.* at pgs. 24, 59.) And several of the remaining defendants, including Thomas Chou, Mikael Van Loon, and Sean Cowell, held interests in the same SLEs through their own entities. (*See id.* at pgs. 27, 28, 30, 31, 60-62, 65-67.) Put simply, the agreements reveal an ongoing relationship between Sales Speek and the remaining defendants in this case.

Moreover, it is unlikely that these agreements are the only documents responsive to this request. Indeed, Plaintiff has also produced excerpts of tax filings, which reveal that Sales Speek also held interests in at least two other SLEs, Certified Doc Prep Services, LP (dkt. 98-2, pg. 4) and Document Preparation Services, LP (*id.* pg. 6)—both of which were involved in the same scheme as the Assure Direct and DDS. While Sales Speek should, at the bare minimum, have contractual agreements with these SLEs, they also provide a colorable basis to believe that other documents exist as well (such as communications regarding the performance of the SLEs). Together, the documents rise well above "a mere suspicion" and provide a reasonable basis for Plaintiff's belief. *Lee v. Lee*, No. CV198814JAKPVCX, 2021 WL 430696, at *4 (C.D. Cal. Jan. 27, 2021).

As an additional point, Sales Speek's response, in which Nesheiwat asserts that he has "conducted an extensive and diligent search of [his] records, as well as the 2.5 million pages of documents provided through discovery in the Bureau Case" (dkt. 98-1, pg. 6 (emphasis added)), further supports the conclusion that its search for documents was deficient. That is, the above referenced partnership agreements came to light because they were filed in the related Bureau Case. (*See Bureau of Consumer Financial Protection v. Chou Team Realty LLC, et al.*, Case No. 8:20-cv-00043-SB-ADS (C.D. Cal. 2020) Dkts. 69-2, 92-5.) Apparently, Sales Speek's

"search" of the 2.5 million documents wasn't extensive enough to locate the clearly responsive documents. And it's hard to believe that the only two documents (out of 2.5 million documents) that bear on Sales Speek's relationship with the remaining defendants happened to be the documents that were the filed. This further supports Plaintiff's belief that Sales Speek's search was deficient and responsive documents exist.

> **Request No. 2** – *All DOCUMENTS sufficient to IDENTIFY YOUR complete relationship with any STUDENT LOAN ENTITY, including all contracts, agreements, and communications.*

This request seeks to discover documents concerning Sales Speek's complete relationship with the SLEs. As such, the DDS and Assure Direct agreements are ever more applicable here. Additionally, the excerpts of tax filings, which reveal that Sales Speek took in more than $200,000 in income from the SLEs in just the year 2016, and the checks produced (*see* dkt. 88-1) reveal that Sales Speek was involved with and receiving income from the SLEs between 2016 and, at least, 2018. As such, Sales Speek should be in the possession of responsive documents, which reveal the income that it received in 2017 and 2018 (such as its tax filings).

Finally, just as with the first request, Sales Speek objects and claims that Nesheiwat conducted a diligent search of his records and the 2.5 million records in the Bureau case. (Dkt. 98-1, pg. 7.) As with the partnership agreements, the Sales Speek checks were likewise filed in the Bureau case (*see Bureau of Consumer Financial Protection*, Case No. 8:20-cv-00043-SB-ADS, Dkts. 190-39, pgs. 4-6.) Once again, the fact that the documents were filed in the Bureau case yet not discovered via a search of documents in the Bureau case casts serious doubt on the diligence of the purported "search".

**Request No. 9** – *All DOCUMENTS sufficient to IDENTIFY all payments or other things of value or consideration that YOU received from any PERSON, entity, or activity related to the use of CONSUMER REPORTS procured through LEND TECH'S EXPERIAN ACCOUNT, including any payments from any STUDENT LOAN ENTITY.*

Next, Plaintiff has produced sufficient evidence to demonstrate that Sales Speek withheld responsive documents identifying payments that it received related to the use of consumer reports or from the SLEs. In her motion, Plaintiff supplied the Court will two pieces of evidence to support her claim that further documents exist.

First, Plaintiff produced excerpts of tax filings, which reveal that more than $200,000 in income was reported to the IRS on behalf of Sales Speek for the year 2016. Given that the income came from three separate entities, Sales Speek should have records relating to the individual payments received from those companies as well as other SLEs. There should be corresponding bank statements, checks, and/or wire transfers. And while Nesheiwat may claim that he no longer has those documents in his possession, he certainly, as the sole owner and president of Sales Speek, has the ability to obtain the documents from its financial institution. Indeed, "[a] party is deemed to have control over documents if he or she has a legal right to obtain them." *Tuggle v. City of Tulare*, No. 119CV01525NONESAB, 2021 WL 765273, at *5 (E.D. Cal. Feb. 26, 2021) (citing *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)).

Second, Plaintiff produced checks, which reveal that Sales Speek took in thousands of dollars during the year 2018 from the SLEs. This reveals that Sales Speek received payments from SLEs between 2016 and at least 2018 (likely longer). Just as the tax filings suggest the existence of bank records and payments,

the checks also support the conclusion that Sales Speek must have further documentation regarding payments it received from SLEs.

        **<u>Request No. 10</u>** – *All DOCUMENTS sufficient to IDENTIFY YOUR FINANCIAL STATEMENTS and tax returns for the prior four years.*

As with Request No. 9, Plaintiff has produced sufficient evidence to provide a colorable basis to believe that Sales Speek has withheld financial statements and tax returns. That is, the excerpts of tax returns reveal that Sales Speek reported at least $200,000 in income during 2016. Further, the checks reveal that Sales Speek continued to receive income from the SLEs well into 2018. Together these documents support the conclusion that Sales Speek either has or had a bank account. Even if that account was closed, Nesheiwat would still have the ability to request copies of the statements from Sales Speek's financial institution. Hence, for discovery purposes, Sales Speek would still be deemed to have control over those documents. *See Tuggle*, 2021 WL 765273, at *5 (citing *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012)).

As a final point, this is not a case where the respondent certifies that he has no responsive documents with respect to one (or even several) discovery requests. Rather, this is a case in which Sales Speek asserts that neither it nor Nesheiwat—its sole owner and president—has ***any*** documents relating to Sales Speek whatsoever. In other words, Sales Speek is asking the Court to believe is that it received hundreds of thousands of dollars over the years from the document preparation scheme. Yet, somehow, it never had a bank account (despite checks being written to it), never filed taxes (despite Plaintiff proffering excerpts of tax filings), and that it doesn't possess any contractual agreements (despite Plaintiff providing agreements).

In the end, it is not Plaintiff's burden to identify with precision each and

1    every specific document that is in Sales Speek's possession. Rather, Plaintiff need
2    only identify a "colorful basis" for its belief that relevant, responsive documents
3    have been improperly withheld, which rises above the level of "mere suspicion".
4    *A&F Bahamas, LLC v. World Venture Grp., Inc.*, No. CV 17-8523 VAP (SS), 2018
5    WL 5961297, at *5 (C.D. Cal. Oct. 19, 2018). Plaintiff has done so in spades.

6    **B.    Plaintiff Requests That The Court Certify The Following Facts**
7    **For A Contempt Proceeding.**

8    Finally, in its Order, the Court requested clarity regarding the specific
9    discovery sanction that Plaintiff seeks. (Dkt. 99 ¶ 3.) As explained below, Reiners
10   seeks contempt sanctions in the form of costs and attorneys' fees incurred to compel
11   compliance with the subject subpoena.

12   While a magistrate judge may not enter a contempt finding, magistrates may
13   "certify facts for a contempt proceeding before the District Judge." *Aguilar v. City*
14   *of Azusa*, No. CV14-9183-GW (JPRX), 2016 WL 11755112, at *2 (C.D. Cal. Jan.
15   5, 2016); *see also* 28 U.S.C. § 636(e)(6). Thus, the magistrate's "role is to
16   determine whether the moving party has presented sufficient evidence to establish a
17   prima facie case of contempt." *Id.* (citing *Proctor v. State Gov't of N.C.*, 830 F.2d
18   514, 521 (4th Cir. 1987)).

19   To establish civil contempt, "the moving party must show by clear and
20   convincing evidence that the contemnor has violated a clear and specific court
21   order." *Pongsai v. Am. Express Co.*, No. Case No. 8:19-cv-01628-DOC, 2020 WL
22   6115086, at *2 (C.D. Cal. Aug. 27, 2020). Once the movant has made that showing,
23   "the burden shifts to the contemnor to show that he or she took every reasonable
24   step to comply and to explain why compliance was not possible." *Id.* (collecting
25   cases). A subpoena "is itself a court order, and noncompliance may warrant
26   contempt sanctions." *Poly-Med, Inc. v. Novus Sci. PTE Ltd.*, No. 17-CV-649-DMS-

27
28

WVG, 2017 WL 2291942, at *2 (S.D. Cal. May 25, 2017) (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, n.5 (9th Cir. 1983)); *see* also *Aguilar v. City of Azusa*, No. CV14-9183-GW (JPRX), 2016 WL 11755112, at *2 (C.D. Cal. Jan. 5, 2016) ("A deposition subpoena constitutes a court order." (citation omitted)).

Here, Plaintiff requests that the Court certify the following facts for a contempt proceeding: On June 15, 2021, Plaintiff issued a subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action directed to Sales Speek, Inc. (*See* Dkt. 87-3 ¶ 5.) Despite numerous attempts to serve Sales Speek, Plaintiff was unable to effectuate service. (*Id.*) Plaintiff's counsel also reached out to Nesheiwat's counsel to request that his client accept service of the subpoena. (*Id.* ¶ 6.) Nesheiwat and his counsel refused to accept service. (*Id.*)

On August 9, 2021, Plaintiff issued a second subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action directed to third-party, Sales Speek, Inc., which specified a response date of September 9, 2021. (*See* 87-1.) The subpoena sought, *inter alia*, documents concerning Sales Speek's relationship with the defendants and student loan consolidation entities, records of payments received as a result of the procurement of consumer reports, and communications relating the procurement of consumer reports. (*Id.*)

On September 2, 2021, Plaintiff served a copy of the subpoena on Jawad Nesheiwat, Sales Speek's president and registered agent. (Dkt. 87-4.) On September 9, 2021, Nesheiwat's counsel sent Plaintiff a letter on behalf of Sales Speek. (*See* Dkt. 87-5.) The letter purported to "return" the subpoena without action because, supposedly, Sales Speek "does not exist." (*Id.*)

On September 17, 2021, Plaintiff's counsel served a discovery dispute letter,

1  which requested that Sales Speek provide a complete response to the subpoena or

2  provide availability to confer regarding a motion to compel. (*See* Dkt. 87-6.)

3  Nesheiwat's counsel responded by sending a second letter that again claimed Sales

4  Speek does not exist and stating that Plaintiff has "provided no evidence that Sales

5  Speek ever conducted any business in California or elsewhere." (*See* Dkt. 87-7, pgs.

6  1-2.) The letter further stated that Plaintiff may consider the response sufficient for

7  conferral purposes under the local rules. (*See id.* at pg. 2.)

8          Plaintiff responded by directing Nesheiwat's counsel to the previously

9  produced contracts that Nesheiwat signed on behalf of Sales Speek. (Dkt. 87-3 ¶

10  11.) Despite additional follow up requests, Nesheiwat's counsel has refused to

11  confer regarding the subpoena. (*Id.* ¶ 12.) Further, Sales Speek failed to provide any

12  response whatsoever to the subpoena. (*Id.*) Hence, by refusing to comply with the

13  validly issued subpoena, Sales Speek violated a clear and specific court order. On

14  these facts alone, the Court may properly certify the facts for a contempt

15  proceeding.

16          Given Sales Speek's refusal to comply, Plaintiff moved to compel a response

17  to the subpoena. After Plaintiff served her initial portions of the stipulation

18  regarding the original motion to compel, Sales Speek served a "response" claiming

19  that no responsive documents exist. (Dkt. 87-8.) On December 8, 2021, the Court

20  issued an Order compelling Sales Speek to provide a complete response to the

21  subject subpoena on or before December 22, 2021. (Dkt. 92.) Thereafter, counsel

22  for the Plaintiff and Sales Speek (and Nesheiwat) conferred regarding the

23  production. (*See* Dkt. 94-1 ¶ 4.)

24          On December 18, 2021, counsel for Sales Speek emailed Plaintiff's counsel

25  to inform him that Nesheiwat had contracted Covid-19 and stated, "we will need to

26  revisit your discovery issues in January." (*Id.* ¶ 5.) Plaintiff's counsel responded by

27

28

1    informing Nesheiwat's counsel that he did not have the authority to alter a Court

2    Order. (*Id.* ¶ 6.) On December 22, 2021, Nesheiwat filed a notice of inability to

3    comply with the Court's December 8, 2021 Order, which informed the Court that

4    Nesheiwat had fallen ill with Covid-19. (Dkt. 93.) The notice also "suggests" that a

5    follow-up status report should be filed by January 14, 2021. (*Id.*) At this point,

6    Sales Speek should once again be found in contempt. While Plaintiff did not object

7    to an extension of the Court's deadline for compliance, Sales Speek never filed any

8    motion to seek an extension of the deadline. Instead, it filed its notice of inability to

9    comply, which has no legal effect, and then proceeded to ignore the Court's Order.

10   As such, the Court should also certify these facts for a contempt proceeding.

11        Finally, on January 12, 2022, Sales Speek finally served its supplemental

12   response to the subject subpoena. (*See* Dkt. 98-1.) Sales Speek's supplemental

13   response was substantively the same as its original response.[1] That is, Nesheiwat

14   (not Sales Speek) again asserts his fifth amendment privilege and then proceeds to

15   double down on the claim that no documents exist. (*See id.*) As explained above,

16   this simply cannot be true, and Plaintiff has provided a colorable basis to believe

17   that further responsive documents exist. Plaintiff also set forth exactly how Sales

18   Speek's claim that it conducted a diligent search is simply not believable. Because

19   Sales Speek has intentionally failed to comply with the Court's December 8th

20   Order, this offers the Court a third basis to certify the facts for a contempt

21   proceeding.

22        In the end, Plaintiff has established that Sales Speek and its counsel have

23   repeatedly and intentional violated clear and specific court orders by failing to

24   respond to the subpoena and then refusing to comply with the Court's Order

---

26   [1] As an aside, Sales Speek's supplemental response was predicable based on

27   Nesheiwat's refusal in engage in discovery in any meaningful way. Indeed, Plaintiff
     even warned the Court that this scenario was likely to play out. (*See* Dkt. 94, pg. 2.)

28

compelling compliance. And because of its refusal to comply, Plaintiff has incurred more than $5,000 in attorneys' fees as well as costs to compel compliance with the subpoena. As such, Plaintiff respectfully requests that the Court certify the following facts for a contempt hearing before the Honorable Judge Stanley Blumenfeld, Jr.

As a final point, even if the Court accepts Sales Speek's claim that no responsive documents exist (it should not), that does not eliminate the necessity of a contempt proceeding. Put simply, Plaintiff should not have to file two motions to compel to obtain a reasonable search for responsive documents only to find out that none exist. As such, regardless of how the Court rules on the motion to compel, it should still certify the above facts for a contempt hearing.

## C.     Conclusion

Sales Speek's response remains evasive and deficient. As explained above, Sales Speek must be in possession of further responsive documents, including documents related to its bank account, its tax filings, and payments that it received from the SLEs. And because Sales Speek (and its counsel) violated not one, but two, court orders, the Court should certify the facts set forth above for a contempt hearing before the Honorable Judge Stanley Blumenfeld, Jr. and order such additional relief as the Court deems necessary and just.

Respectfully submitted,

Dated: February 7, 2022          By:     */s/ Taylor T. Smith*

Aaron D. Aftergood (239853)
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone:  (310) 550-5221
Facsimile:   (310) 496-2840

Taylor T. Smith (*admitted pro hac vice*)
tsmith@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone:   (720) 907-7628
Facsimile:    (303) 927-0809

Attorneys for Plaintiff Erica Reiners
and the Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on February 7, 2022.

/s/ Taylor T. Smith